E-FILED
Tuesday, 18 November, 2014  08:56:54 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |  |
|---|---|---|
| DEAN JEFFERY CHADWICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14-CV-3190 |
| | ) | |
| DR. HUGH LOCHARD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MERIT REVIEW OPINION

JOE BILLY MCDADE, U.S. District Judge.

    Plaintiff proceeds pro se from his incarceration in the Lincoln Correctional Center. He pursues claims arising from an alleged delay in diagnosing and treating his fractured knee.

    Plaintiff alleges that, on January 29, 2014, he slipped on ice while walking to the prison cafeteria, suffering injuries which rendered him unable to walk. According to Plaintiff's Complaint, Plaintiff sought medical care for his alleged serious pain and swelling, but he was "treated more like a nuisance than a person in need of medical treatment." (Compl. p. 9.) On February 13, 2014, an x-ray was taken which showed that Plaintiff had fractured his left knee.

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012). Plaintiff's own description of his injury allows an inference that the injury was serious. However, inferring deliberate indifference is more difficult. Deliberate indifference is more than malpractice: Deliberate indifference is the conscious disregard of an excessive risk to an inmate's health. Arnett v. Webster, 658 F.3d 742, 751 (7th Cir. 2011). Deliberate indifference arises when a doctor's decisions are a "'such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" Sain v. Wood, 512 F.3d 886, 894-95 (7th Cir. 2009)(quoted cite omitted).

On September 16, 2014, the Court ordered Plaintiff to provide more factual allegations describing what actions were taken by Defendants during the two weeks between his slip and fall and the taking of an x-ray. In response, Plaintiff submitted several documents and some additional factual allegations.

One of the documents submitted—a response to Plaintiff's grievance—indicates that during the two weeks between Plaintiff's

fall and the x-ray Plaintiff received the following care: Motrin and Tylenol for pain, instructions to keep his foot and knee elevated, Bactrim and antibiotics to treat open sores, a slow walk pass, a bottom bunk permit, and ice packs. He was also kept in the infirmary for much, but not all, of the time. (d/e 10, p. 9.) X-ray and labs were ordered on February 7, 2014, and Plaintiff was admitted to the infirmary on a more permanent basis on February 14, 2014, after the x-ray showed an "acute left tibial plateau fracture." Id.

    Plaintiff does not appear to dispute that he received the care set forth in the above paragraph. What he seems to challenge is an alleged delay in the diagnosis of the fracture; an alleged refusal to prescribe effective pain medicine; the doctor's alleged instruction to Plaintiff to walk on his injured knee; and, an alleged delay in providing Plaintiff a wheelchair.

    In particular, Plaintiff alleges that he was sent from the infirmary back to his cell on January 30 or 31, 2014, but that he returned to the health care unit on February 3, 2014, complaining that he could not stand on his leg. He was allegedly in so much pain that tears were running down his face. (d/e 10, p. 11.) The

nurses allegedly admitted Plaintiff to the infirmary but refused Plaintiff's pleas for stronger pain medicine and refused to empty his urine bottle, forcing Plaintiff to urinate in a nearby trashcan. Id. Plaintiff allegedly saw Dr. Obaisi on February 7, 2014, who told Plaintiff that his ankles were badly sprained and that Plaintiff should "walk it out." On February 8, 2014, still in the infirmary, Plaintiff was ordered to "ambulate" with a walker in order to help relieve his pain. (d/e 11, p. 2.) Plaintiff's requests for stronger pain medicine were again allegedly refused. On February 12, 2014, Plaintiff was allegedly released from the infirmary despite his protestations and again told to "walk it off," even though Plaintiff told the health care staff that something was seriously wrong because he could not walk on the leg or bear any weight on the leg. Plaintiff alleges that he could not walk to the prison cafeteria or stand for his shower. On February 13, 2014, Plaintiff did manage to walk, allegedly with great difficulty and pain, to receive an x-ray, which showed that his knee was fractured. Id. p. 3. A wheel chair was allegedly still not ordered for Plaintiff until 45 days after his injury. Id.

In addition to these more detailed factual allegations, Plaintiff has provided a March, 2014, preoperative report from an orthopedic surgeon which seems to suggest that Plaintiff's weight bearing after the injury caused further harm to the structure of Plaintiff's knee. The report reads in pertinent part:

> Since films that are given to us are on a CD, they are reviewed and dated February 13, 2014, show an acute-appearing proximal tibial medial plateau fracture; however, patient has been full weight bearing. Therefore, x-rays are repeated and there is significant collapse of the entire medial plateau, widening of the intercondylar notch of the tibia. This is now a displaced and angulated tibia apparent[ly] due to the patient's full weight bearing. I do not know what restrictions were placed on the patient initially after injury or after the diagnosis made with this x-ray.

(Dr. Olysav March 2014 Report, d/e 10, p. 19.) Another report indicates that Plaintiff had knee surgery in May, 2014. (Dr. Olysav July 2014 report, d/e 10, p. 20.)

The Court concludes that Plaintiff's additional factual allegations allow an inference that Defendants were deliberately indifferent to his injury. Plaintiff alleges that he suffered severe and unnecessary pain, as well as further structural damage to his knee, as a result of the delay in diagnosis, the instruction to "walk it off," and the refusal to

provide effective pain relief. "[A] delay in the provision of medical treatment for painful conditions—even non-life-threatening conditions—can support a deliberate-indifference claim, . . . , so long as the medical condition is 'sufficiently serious or painful.'" Grieveson v. Anderson, 538 F.3d 763, 779 (7th Cir. 2008)(reversing summary judgment to the defendants on a prisoner's claim of a 1 ½ day delay in obtaining medical care for the prisoner's broken nose)(quoted and other cites omitted); *see also* Williams v. Liefer, 491 F.3d 710, 715 (7th Cir.2007)(whether a six-hour delay in obtaining medical treatment for a prisoner's chest pain prolonged and exacerbated his pain and high blood pressure was a jury question); *Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004)(unjustified delay in providing prescribed antibiotic could allow jury to conclude that delay caused prisoner "many more hours of needless suffering for no reason.") Accordingly, this case will proceed for service pursuant to the standard procedures.

    Plaintiff has also filed a "motion to introduce a medical issue." (d/e 9.) He states that he is legally blind, his left eye

having been amputated. Plaintiff does not appear to be trying to add this as a claim. He appears to simply be informing the Court of his disability. The Court will take that disability into account when ruling on Plaintiff's renewed motion for counsel.

**IT IS THEREFORE ORDERED:**

1) Plaintiff's motions to file grievances and other documents in support of his complaint and to add factual allegations are granted (10, 11).

2) Plaintiff's "motion to introduce medical issue" is granted (9) to the extent Plaintiff seeks to inform the Court that he is legally blind.

3) Plaintiff's motion for a status is denied as moot (6).

4) Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff states an Eighth Amendment claim for deliberate indifference to his serious medical needs regarding the injury he suffered on January 29, 2014. This case proceeds solely on the claims identified in this paragraph. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

5) This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

6) The Court will attempt service on Defendants by mailing each Defendant a waiver of service. Defendants have 60 days from the date the waiver is sent to file an Answer. If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

7) With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding

addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Opinion. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants. Therefore, no response to the answer is necessary or will be considered.

9) This District uses electronic filing, which means that, after Defense counsel has filed an appearance, Defense counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defense counsel copies of motions and other papers that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or

responses sent to the Clerk will be returned unfiled, unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defense counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

10) Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

11) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

12) If a Defendants fails to sign and return a waiver of service to the clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshal's service on that Defendant and will require that Defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

13) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' counsel.

14) **The clerk is directed to attempt service on Defendants pursuant to the standard procedures.**

15) **The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

ENTERED: November 18, 2014.

FOR THE COURT:

                                **s/Joe Billy McDade**
                                JOE BILLY MCDADE
                          UNITED STATES DISTRICT JUDGE